IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **MARIO ECKERT, ROBERT BAKER, STEVE BILLET, KEVIN BLOOM, JR., SHAWN CLARK, KAREN DIETZ, HERBERT C. GARBER, GISBEL GARCIA, JR., MARIO GAROFALO, BRADLEY HOCKENBERRY, MARTIN PARSON, and FRED WILSON,** | CIVIL ACTION NO. 15-CV-1920 <br><br> (Chief Judge Conner) |
| Plaintiffs, | |
| v. | |
| **CHAUFFEURS, TEAMSTERS AND HELPERS LOCAL UNION 776 PROFIT SHARING PLAN, CHAUFFEURS, TEAMSTERS AND HELPERS LOCAL UNION 776, EDGAR H. THOMPSON, and RONALD W. HICKS,** | |
| Defendants | |

## MEMORANDUM

Plaintiffs Mario Eckert, Robert Baker, Steve Billet, Kevin Bloom, Jr., Shawn Clark, Karen Dietz, Herbert C. Garber, Gisbel Garcia, Jr., Mario Garofalo, Bradley Hockenberry, Martin Parson, and Fred Wilson commenced this action against defendants Chauffeurs, Teamsters and Helpers Local Union 776 ("the Union"), its Profit Sharing Plan ("the Plan"), Edgar H. Thompson ("Thompson"), and Ronald W. Hicks ("Hicks"), alleging that defendants denied them retirement benefits under the Plan. (See Doc. 1). Presently before the court is defendants' motion (Doc. 31) for summary judgment pursuant to Federal Rule of Civil Procedure 56. FED. R. CIV. P. 56. For the reasons that follow, the court will deny the motion.

I.   **<u>Factual Background & Procedural History</u>**[1]

Plaintiffs are former officers and staff of the Union.  (Doc. 31-2 ¶ 1; Doc. 36 ¶ 1).  The Plan is a single employer, defined contribution employee benefit plan within the meaning of Sections 3(2) and 3(41) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1002(2), (41).  (Doc. 31-2 ¶ 2; Doc. 36 ¶ 2).  Thompson and Hicks are the Plan's current trustees.  (Doc. 1 ¶¶ 16-17).

The Union makes occasional contributions to the Plan throughout each year for the future benefit of Plan participants.  (Doc. 31-2 ¶ 3; Doc. 36 ¶ 3).  Employees cannot contribute to the Plan.  (Doc. 31-2 ¶ 6; Doc. 36 ¶ 6).  Plan retirement benefits only accrue through employer contributions and investment income.  (Doc. 31-2 ¶ 6; Doc. 36 ¶ 6).  Contributions are allocated to individual accounts in accordance with a formula specified in the Plan's documentation.  (Doc. 31-2 ¶ 4; Doc. 36 ¶ 4).  Participants receive their allocation upon retirement or end of covered employment.  (Doc. 31-2 ¶ 5; Doc. 36 ¶ 5).  The Plan Adoption Agreements— executed in 2008 and 2009—provide that an employee must complete one year of service and be 21 years old in order to be eligible for the Plan.  (Doc. 31-2 ¶ 16; Doc.

---

[1] Local Rule 56.1 requires that a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 be supported "by a separate, short, and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried." LOCAL RULE OF COURT 56.1. A party opposing a motion for summary judgment must file a separate statement of material facts, responding to the numbered paragraphs set forth in the moving party's statement and identifying genuine issues to be tried. <u>Id.</u> Unless otherwise noted, the factual background herein derives from the parties' Rule 56.1 statements of material facts. (<u>See</u> Docs. 31-2, 36). To the extent the parties' statements are undisputed or supported by uncontroverted record evidence, the court cites directly to the statements of material facts.

31-4 at 2; Doc. 31-6 at 2, 6; Doc. 36 ¶ 16).  Both the 2008 and 2009 Adoption Agreements specifically waive eligibility requirements for individuals employed as of January 1, 2008.  (Doc. 31-4 at 2; Doc. 31-6 at 2, 6; Doc. 36 ¶ 16).

The Union's Bylaws authorize the Union's Executive Board ("the Board") to make decisions regarding the Plan's design, such as eligibility and vesting requirements for obtaining Plan benefits.  (Doc. 31-2 ¶ 7; Doc. 36 ¶ 7).  The pertinent Bylaw Section 15(D) states:

> The Local Union Executive Board may from time to time provide the terms and conditions of employment for Officers, employees and representatives of this organization including, but not limited to, such fringe benefits as vacation with pay, holidays, sick leave, time off for personal leave, and, in connection therewith, any disability or sickness, health and welfare and retirement benefits and activities and may from time to time provide changes therein, as well as additional compensations and allowances.  The Local Union Executive Board or the President is authorized to make to any Local Union Officer or employee advances on his salary and/or vacation pay.
>
> Based on the paragraph above the Local Union Executive Board shall have the sole authority to set and/or periodically adjust the salaries for staff/clerical employees of this Local Union.

(Doc. 31-10 at 18).  This language notwithstanding, the parties dispute the extent of the Board's authority as well as applicable Board procedures for making discretionary decisions. (Doc. 32 at 11-18; Doc. 35 at 10-22; see Doc. 31-2 ¶¶ 7, 22, 30; Doc. 36 ¶¶ 7, 22, 35).  The parties agree that the Union's Bylaws require the Board to meet at least monthly and that the Board's Recording Secretary must take minutes, which become the official record of a meeting.  (Doc. 31-2 ¶¶ 8-10; Doc. 36 ¶¶ 8-10).

3

The parties disagree on the requisite level of detail for said minutes. (Doc. 31-2 ¶¶ 11-12; Doc. 36 ¶¶ 10-12).

In October 2011, the Union held elections for officers and business agents. (Doc. 31-2 ¶ 18; Doc. 36 ¶ 18). Union membership elected, *inter alia*, plaintiffs Fred Wilson ("Wilson"), Mario Garofalo ("Garofalo"), and Herbert Garber ("Garber") to three-year terms beginning January 1, 2012 and ending December 31, 2014. (Doc. 31-2 ¶ 18; Doc. 36 ¶ 18). All three men served on the Board, and Garofalo acted as one of two trustees of the Plan. (Doc. 31-2 ¶¶ 19-20; Doc. 36 ¶¶ 19-20).[2]

The Union takes issue with an amendment to Plan documentation memorialized in the Plan's 2012 Adoption Agreement. (Doc. 31-2 ¶ 23; Doc. 32 at 11-12; see Doc. 31-18 at 6). The Union alleges that Garofalo independently emailed Continental Benefit Group, the Plan's third-party administrator, to alter Plan documentation to include a waiver of the one-year service eligibility requirement for current (as of September 1, 2012) but not future employees. (Doc. 31-2 ¶ 22; see Doc. 31-18 at 6). Plaintiffs aver that the Board approved the waiver along with new Plan documentation at a Board meeting on July 2, 2012. (Doc. 36 ¶ 22). The meeting minutes from July 2, 2012 do not indicate approval of the waiver specifically; the minutes only reflect perfunctory approval of new Plan documentation. (Doc. 31-22 at 4). From January 1, 2012 until December 31, 2014, the Union transferred approximately $70,000 to $100,000 to the Plan in compliance

---

[2] From 2008 until 2012, Pension Alliance, Inc. served as the Plan's third-party administrator. (Doc. 31-2 ¶ 15; Doc. 36 ¶ 15; see Doc. 31-14). The Board replaced Pension Alliance, Inc. with Continental Benefit Group in 2012. (Doc. 31-2 ¶ 21; Doc. 36 ¶ 21).

with the disputed waiver in the 2012 Adoption Agreement.  (Doc. 31-2 ¶ 26; Doc. 36 ¶ 26).

All plaintiffs, except Karen Deitz, ran unsuccessfully for election in October 2014.  (Doc. 31-2 ¶ 27; Doc. 36 ¶ 27).  At the conclusion of the 2012-2014 term, the Union terminated plaintiffs' employment.  (Doc. 31-2 ¶ 28; Doc. 36 ¶ 28).  Plaintiffs requested distributions from the Plan shortly thereafter.  (Doc. 31-2 ¶ 29; Doc. 36 ¶ 29).  Thompson and Hicks, acting as successor trustees of the Plan, sent letters to plaintiffs stating that they were unable to locate records confirming the adoption of the disputed waiver.  (Doc. 31-2 ¶ 30; Doc. 36 ¶ 30).  The trustees indicated that plaintiffs would receive their contributions from the Plan less any amounts attributable to their first year of service.  (Doc. 31-2 ¶ 30; Doc. 36 ¶ 30).  The Plan has distributed these funds to plaintiffs.  (Doc. 31-2 ¶ 32; Doc. 36 ¶ 32).  Plaintiffs appealed the decision of the trustees, and the Plan has not issued a determination on plaintiffs' appeals.  (Doc. 31-2 ¶¶ 33, 37; Doc. 36 ¶¶ 33, 37).

Plaintiffs commenced this action on October 2, 2015, alleging one count of denial of benefits in violation of ERISA, 29 U.S.C. § 1132(a)(1)(B), against the Plan and the Union; and one count of breach of fiduciary duty in violation of ERISA, 28 U.S.C. §§ 1104(a)(1)(A), (D), against Thompson and Hicks.  (Doc. 1).  The court will refer to defendants collectively as "the Union."  The Union filed an answer on December 7, 2015.  (Doc. 8).  On June 7, 2016, the Union filed an amended answer and advanced two counterclaims, to wit:  one count of breach of fiduciary duty in violation of the Labor-Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. § 501(a), against Wilson, Garofalo, and Garber; and one count of breach of

fiduciary duty in violation of ERISA, 28 U.S.C. § 1104(a)(1)(D) against Garofalo. (Doc. 27). On August 5, 2016, the Union filed its motion for summary judgment (Doc. 31) on plaintiffs' claims and on the Union's counterclaims. The motion is fully briefed (Docs. 32, 35, 37) and ripe for disposition.

## II.  Legal Standard

Through summary adjudication, the court may dispose of those claims that do not present a "genuine dispute as to any material fact" and for which a jury trial would be an empty and unnecessary formality. FED. R. CIV. P. 56(a). The burden of proof tasks the non-moving party to come forth with "affirmative evidence, beyond the allegations of the pleadings," in support of its right to relief. Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). This evidence must be adequate, as a matter of law, to sustain a judgment in favor of the non-moving party on the claims. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-57 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-89 (1986). Only if this threshold is met may the cause of action proceed. See Pappas, 331 F. Supp. 2d at 315.

## III.  Discussion

The Union avers that the disputed waiver permitting Plan contributions during a Union employee's first year of service is unenforceable. (See Doc. 32 at 11-12). The Union argues that the Board cannot amend the Plan unilaterally and that no evidence supports approval of said amendment by the Board. (Doc. 32 at 12-18). The Union also counterclaims that Wilson, Garofalo, and Garber breached fiduciary

duties under the LMRDA and that Garofalo breached fiduciary duties pursuant to ERISA.  (Doc. 27 ¶¶ 71-79).  The court will address these issues *seriatim*.

### A.     Procedure for Amending Plan Documentation

The Union contends that its membership did not ratify the disputed amendment, rendering it inoperative.  (Doc. 32 at 16-18).  Plaintiffs rejoin that membership did not need to ratify this decision as the Board may amend the Plan unilaterally.  (Doc. 35 at 17-22).  The parties cite Section 15(D) of the Union's Bylaws as basis for the procedure to amend the Plan.  (Doc. 32 at 16-18; Doc. 35 at 20; see Doc. 31-10).

The bylaws and constitution of an association embody the contract between the association and its members.  See Petition of Bd. of Directors of State Police Civic Ass'n, 472 A.2d 731, 736 (Pa. Commw. Ct. 1984); see also O'Neill v. United Ass'n of Journeymen Plumbers & Steam-Fitters of U.S. & Canada, 36 A.2d 325, 327 (Pa. 1944).  In Pennsylvania, contract interpretation is a question of law, tasking the court to discern the parties' intent through the prism of the written agreement. Dep't of Transp. v. Pa. Indus. for the Blind & Handicapped, 886 A.2d 706, 711 (Pa. Commw. Ct. 2005) (citing Robert F. Felte, Inc. v. White, 302 A.2d 347, 351 (Pa. 1973)). The court must determine whether the contract's language is ambiguous, meaning, "subject to more than one reasonable interpretation when applied to a particular set of facts."  Murphy v. Duquesne Univ. of the Holy Ghost, 777 A.2d 418, 430 (Pa. 2001).

Courts consider the language of the contract itself, alternative meanings tendered by the parties, and the nature of any objective evidence offered in support

of the proposed constructions in evaluating ambiguity. Bohler-Uddeholm Am., Inc. v. Ellwood Grp., Inc., 247 F.3d 79, 93 (3d Cir. 2001) (quoting Mellon Bank, N.A. v. Aetna Bus. Credit, Inc., 619 F.2d 1001, 1011 (3d Cir. 1980)). A term is not rendered ambiguous merely because the parties disagree on the proper interpretation. See Stewart v. SWEPI, LP, 918 F. Supp. 2d 333, 341-42 (M.D. Pa. 2013) (quoting Baney v. Eoute, 784 A.2d 132, 136 (Pa. Super. Ct. 2001)). Absent ambiguity, the plain language of the agreement as written must be interpreted and enforced by the court. See Murphy, 777 A.2d at 429. The court must be guided by the plain meaning of the language employed by the parties rather than their "silent intentions." T.W. Phillips Gas & Oil Co. v. Jedlicka, 42 A.3d 261, 267 (Pa. 2012).

The plain language of Section 15(D) of the Union's Bylaws is unambiguous. Section 15(D) states in pertinent part: "The Local Union Executive Board may from time to time provide the terms and conditions of employment for Officers, employees and representatives of this organization including . . . retirement benefits [and] may from time to time provide changes therein[.]" (Doc. 31-10 at 18). The court interprets this plain language to mean that the Board has authority to change retirement benefits, which are indisputably set forth in the Plan documentation. (Doc. 32 at 17; Doc. 35 at 14).

The Union alternatively proposes that the succeeding paragraph in Section 15(D) restricts the unilateral authority of the Board: "Based on the paragraph above the Local Union Executive Board shall have the *sole authority* to set and/or periodically adjust the salaries for staff/clerical employees of this Local Union." (Doc. 31-10 at 18 (emphasis added)). The Union posits that because the Board has

8

sole authority to set or adjust salaries, it does not have sole authority to implement changes articulated in the preceding paragraph.  (Doc. 32 at 17-18).  This proffered meaning of Section 15(D) is not a reasonable interpretation of its plain language.  See Bohler-Uddeholm, 247 F.3d at 93; Murphy, 777 A.2d at 429.  The plain language of the Union's Bylaws states that the Board has the authority to change retirement benefits as well as "sole authority" to adjust salaries for staff and clerical employees of the Union.  (Doc. 31-10 at 18).  These two paragraphs articulate separate powers of the Board.  The second paragraph does not implicitly limit the unequivocal authority of the Board to change retirement benefits.

The Union's interpolation of a restriction on the Board's power to change retirement benefits is simply not written in the Union's Bylaws.  It is significant that other sections of the Union's Bylaws that delineate the parameters of Board authority expressly include the Union's proposed restriction.  For example, Section 13(A)(11) specifies that the Board may create or terminate trusts that provide benefits to Union members "all subject to approval by the membership."  (Id. at 13).  This express condition does not exist in Section 15(D).  (See id. at 18).  The court must rely on the plain language of Section 15(D), not the contrived meaning

proposed by the Union. See Jedlicka, 42 A.3d at 267. The plain language of the Union's Bylaws indicates that the Board may unilaterally change terms of the Plan.[3]

### B. The Board's Approval of the Amendment

The Union asserts that the Board did not approve the disputed amendment. (Doc. 32 at 11-16). The Union highlights that the pertinent meeting minutes do not indicate passage of the amendment and asserts that Garofalo unilaterally included the waiver in the 2012 Adoption Agreement. (Id. at 12, 15; Doc. 37 at 3, 5). Plaintiffs remonstrate that meeting minutes function only as a summary of events at a Board meeting and that Garofalo acted at the direction of the Board. (Doc. 35 at 11-14).

Impassable disputes of fact remain concerning these dispositive issues. Plaintiffs provide affirmative evidence that the Board may have approved the disputed amendment, namely deposition testimony that meeting minutes may not reflect the exact decisions of the Board, (see Doc. 35 at 11-12; Doc. 35-5 at 16:1-4; Doc. 35-18 at 21:10-15), and affidavits detailing Board approval of the amendment, (see Doc. 35 at 13-14; Doc. 35-17). See Pappas, 331 F. Supp. 2d at 315. Plaintiffs thus create material factual disputes that preclude Rule 56 judgment for the Union. FED. R. CIV. P. 56(a). The court will accordingly deny the Union summary judgment on plaintiffs' claims.

---

[3] The Union also argues that the International Brotherhood of Teamsters Constitution, Article XXII, Section 4(e), prohibits this type of unilateral action. (Doc. 32 at 16-17). Plaintiffs provided the court with this document, as the Union failed to do so in its exhibits, and cited the entire relevant section which clearly does not support the Union's argument. (Doc. 35 at 17-18; Doc. 35-23 at 11). The Union did not respond to this proposition in its briefing. The court finds that the Union has therefore waived this argument. See D'Angio v. Borough of Nescopeck, 34 F. Supp. 2d 256, 265 (M.D. Pa. 1999).

### C. The Union's Counterclaims

The Union counterclaims that Wilson, Garofalo, and Garber breached their fiduciary duties under the LMRDA and that Garofalo also breached his fiduciary duties under ERISA. (Doc. 27 ¶¶ 71-79). These claims depend upon whether the Board approved the disputed waiver, as fiduciaries breach their duties under both statutes if they do not act in accordance with union bylaws. See 29 U.S.C. § 501(a); 29 U.S.C. § 1104(a)(1)(D). As noted *supra*, material disputes of fact concerning compliance with the Union's Bylaws still exist *sub judice*. The court consequently denies summary judgment for the Union on its counterclaims.

## IV. Conclusion

For all of the reasons set forth above, the court will deny the Union's motion (Doc. 31). An appropriate order shall issue.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania

Dated: March 13, 2017