# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARIO ECKERT, ROBERT BAKER, STEVE BILLET, KEVIN BLOOM, JR., SHAWN CLARK, KAREN DIETZ, HERBERT C. GARBER, GISBEL GARCIA, JR., MARIO GAROFALO, BRADLEY HOCKENBERRY, MARTIN PARSON, and FRED WILSON, | CIVIL ACTION NO. 1:15-CV-1920 (Chief Judge Conner) |
| Plaintiffs | |
| v. | |
| CHAUFFEURS, TEAMSTERS AND HELPERS LOCAL UNION 776 PROFIT SHARING PLAN, CHAUFFEURS, TEAMSTERS AND HELPERS LOCAL UNION 776, EDGAR H. THOMPSON, and RONALD W. HICKS, | |
| Defendants | |

## MEMORANDUM

Plaintiffs commenced this action against defendants pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq*. Presently before the court for judgment is the complaint (Doc. 1) against defendants Chauffeurs, Teamsters and Helpers Local Union 776 Profit Sharing Plan ("the Plan") and Chauffeurs, Teamsters and Helpers Local Union 776 ("the Union") for denial of benefits and against the Union, Edgar H. Thompson ("Thompson"), and Ronald W. Hicks ("Hicks") for breach of fiduciary duty. Also before the court are defendants' counterclaims (Doc. 27) against plaintiffs Herbert C. Garber ("Garber"), Mario Garofalo ("Garofalo"), and Fred Wilson ("Wilson") for breach of fiduciary

duty in violation of the Labor-Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. § 501(a), and against Garofalo for breach of fiduciary duty in violation of ERISA. A non-jury trial was held on October 23 and October 24, 2017. Pursuant to Federal Rule of Civil Procedure 52(a), the court's findings of fact and conclusions of law are set forth below.

I. **Findings of Fact**[1]

The International Brotherhood of Teamsters charters the Union which is governed by the Local 776 Union Bylaws. (See P-1 at 1-2). The Union's executive board consists of the following positions: president, vice president, secretary-treasurer, recording secretary, and three trustees. (Doc. 54 ¶ 7; P-1 at 3-8). Business agents and stewards assist the executive board in the daily governance of the Union and administration of the bylaws. (P-1 at 8). The bylaws provide for election of executive board members and business agents by the membership every three years. (Id. at 17). The International Brotherhood of Teamsters supplies local unions with a "working Manual" designed to guide each local union in developing its own policies and procedures. (D-8).

The executive board must meet monthly and the recording secretary takes down the minutes. (Doc. 54 ¶¶ 7-8). A majority vote is required for all executive board decisions. (Id. ¶ 7). The president casts the deciding vote on any question

---

[1] Citations to the record include the transcript of trial convened on October 23 and October 24, 2017 ("10/23/17 Trial Tr." and "10/24/17 Trial Tr.," respectively), plaintiffs' exhibits ("P-"), defendants' exhibits ("D-"), the parties' stipulation of undisputed facts (Doc. 54), the October 20, 2017 depositions of Robert Green and Chad Turns ("Green Dep." and "Turns Dep.," respectively), and the court's summary judgment opinion dated March 13, 2017.

2

when a tie occurs. (P-1 at 3; 10/23/17 Trial Tr. 121:7-11). The executive board's monthly meeting minutes are read aloud at general membership meetings but are not subject to general membership approval. (Doc. 54 ¶ 9). At each executive board meeting, the previous meeting's minutes are reviewed and accepted with corrections as necessary. (See generally P-60). Members have a right of access to information concerning the conduct of the Union's business. (P-1 at 35). The secretary-treasurer is required to provide access to Union records to any member during normal business hours upon request. (Id. at 5).

The Union administers and contributes to an employee pension benefit plan subject to ERISA. (Doc. 54 ¶¶ 2-3). The executive board is authorized to set the terms and conditions of union employment including, *inter alia*, unilaterally changing retirement benefits. (P-1 at 16); see also Eckert v. Chauffeurs, Teamsters & Helpers Local Union 776 Profit Sharing Plan, No. 15-CV-1920, 2017 WL 959340, at *4 (M.D. Pa. Mar. 13, 2017). The Union designates trustees to administer the benefit plan. (Doc. 54 ¶ 10). The plan is funded solely through employer contributions and investment income, and contributions made to the plan in a particular year are allocated among participants' accounts according to a salary-based formula. (Id. ¶¶ 4, 6). Participants may request distribution from the plan upon retirement or separation from covered employment. (Id. ¶ 5).

### A. The 2008 Plan

Prior to 2008, the Union provided retirement benefits to employees through participation in the Joint Council 53 retirement trust. (P-3). On May 5, 2008, the executive board voted to withdraw from the Joint Council 53 retirement plan and

3

establish an alternative plan for Union employees. (P-4 at 1; P-60 at 5/5/08). Hicks served as a Union trustee from January 2008 until his resignation in 2009, and he attended the May 5, 2008 meeting. (10/23/17 Trial Tr. 95:17-97:23). Thompson served as a business agent from 2008 through 2011. (Id. at 35:9-13, 36:6-7, 71:19-21).

After withdrawing from the Joint Council 53 trust, the Union implemented an adoption agreement and summary plan description for a new retirement benefit plan (hereinafter the "Plan") on December 20, 2008. (See P-5; P-6). The Plan was retroactively effective on January 1, 2008. (P-5 at 1; P-6 at 1). An employee became eligible to participate in the Plan after completing one year (1,000 hours) of covered service. (P-5 at 1; P-6 at 2). The executive board waived this one-year-of-service requirement for anyone employed by the Union as of the Plan's January 1, 2008 effective date. (P-5 at 1; P-6 at 2). On March 23, 2009, the executive board approved a Plan restatement which retained the one-year-of-service requirement waiver for employees hired on or before January 1, 2008. (P-9 at 1, 23; P-10 at 5; 10/23/17 Trial Tr. 102:3-12; see generally P-11). After approving the 2009 restatement, the executive board amended the Plan in November 2009 and twice in 2011. (P-12; P-13; P-14). The executive board meeting minutes make no mention of the 2009 restatement or the Plan amendments in 2009 and 2011. (See generally P-61; see also 10/23/17 Trial Tr. 61:7-63:4, 103:18-105:23).

### B. The 2012 Plan

The Union held its regularly scheduled election of executive board members and business agents in October 2011. (Doc. 54 ¶ 11). The following officials were elected to a three-year term beginning January 1, 2012 and concluding December

4

31, 2014: President Fred Wilson, Vice President John White ("White"), Secretary-Treasurer Mario Garofalo, Recording Secretary Herbert Garber, and Trustees Robert Green ("Green"), Joe Thevenin ("Thevenin"), and Chad Turns ("Turns"). (Id. ¶¶ 11-12; 10/23/17 Trial Tr. 178:14-18; 10/24/17 Trial Tr. 57:3-10; Green Dep. 5:6-25; Turns Dep. 5:24-6:8). Upon taking office, the executive board hired Karen Dietz ("Dietz") as secretary to the Union president. (P-60 at 1/3/12; see also Doc. 54 ¶ 16).

The new executive board received two main grievances from Union employees about their pension benefits.[2] *First*, newly elected and appointed Union employees complained that they were losing a year of benefits in the absence of a waiver addressing the one-year-of-service requirement. (10/23/17 Trial Tr. 122:2-20, 129:22-130:2; 10/24/17 Trial Tr. 8:18-21, 35:23-36:15, 57:16-22, 81:20-82:8, 105:16-106:4). *Second*, some employees feared a degradation of their pension benefits because they were compelled to make investment decisions without professional guidance. (10/24/17 Trial Tr. 6:24-7:6). The executive board charged Garofalo as secretary-treasurer with exploring solutions to these concerns. (10/23/17 Trial Tr. 122:20-25; 10/24/17 Trial Tr. 8:22-9:4, 57:23-58:13, 80:8-18, 82:9-14).

At the conclusion of his investigation, Garofalo presented two recommendations to the Union executive board. He proposed moving the Union's retirement investments to Merrill Lynch to address employee concerns regarding investment decisions. (10/24/17 Trial Tr. 7:19-8:17, 80:8-81:8). The executive board

---

[2] The colloquial phrases "pension plan" and "retirement plan" are used interchangeably by the parties to refer to the Plan. Similarly, the phrases "pension benefits" and "retirement benefits" are used interchangeably. (10/23/17 Trial Tr. 22:1-18).

5

approved this recommendation and the Union's retirement investments were transferred to Merrill Lynch in June 2012. (P-60 at 6/4/12). Garofalo also recommended establishing an amended or restated pension plan which would mirror the 2009 restatement but include a waiver of the one-year-of-service requirement for anyone employed on or before September 1, 2012. (10/23/17 Trial Tr. 129:1-2; 10/24/17 Trial Tr. 9:5-16). To achieve this objective, the executive board retained Continental Benefit Group Continental Benefit Group ("Continental") as the new third party contract administrator for the Plan. (Doc. 54 ¶ 14; see also 10/24/17 Trial Tr. 26:5-22).

Continental drafted a proposal that reflected a waiver of the one-year-of-service requirement. (Id. ¶ 15). The summary plan description stated in relevant part: "[I]f you were an eligible employee as of September 1, 2012, you shall become a participant as of that date for purposes of Employer Discretionary Contributions." (P-18 at 2). At the July 2, 2012 executive board meeting, Garofalo provided each board member with a copy of the proposal and supporting documents. (10/23/17 Trial Tr. 127:6-129:5; 10/24/17 Trial Tr. 9:20-25, 10:19-11:5, 31:14-15; see also P-17; P-18; P-19). The executive board members reviewed the proposed documents, discussed the various amended provisions and the cost to the Union of the one-year-of-service requirement waiver, and voted to approve the 2012 Plan amendment. (10/23/17 Trial Tr. 127:14-130:21, 135:4-136:13, 180:4-183:19; 10/24/17 Trial Tr. 11:6-18, 14:6-15:14, 53:2-13, 59:3-61:16, 70:1-12, 82:21-85:6, 97:21-24, 99:2-14, 108:20-109:12; Green Dep. 7:5-8:3, 9:24-11:5; Turns Dep. 11:6-17, 8:20-9:14, 21:4-18, 37:25-38:7, 72:3-21; P-15 at 3; P-60 at 7/2/12).

The waiver affected members of the executive board who participated in the Plan as well as office personnel. (10/23/17 Trial Tr. 65:24-66:21, 186:17-25; 10/24/17 Trial Tr. 99:2-11). Executive board members White, Thevenin, Green, and Turns each voted to approve the 2012 Plan amendment but did not personally benefit because they did not participate in the Plan. (10/23/17 Trial Tr. 186:9-16; 10/24/17 Trial Tr. 15:15-19, 62:23-24; Green Dep. 9:9-23; Turns Dep. 11:16-24). The executive board appointed Garofalo and Turns as Plan trustees, and both signed the adoption agreement on August 17, 2012. (Doc. 54 ¶ 13; P-17 at 10; 10/24/17 Trial Tr. 10:1-18).

Garber read the July 2, 2012 executive board meeting minutes aloud at the July and August 2012 general membership meetings. (P-61 at 7/8/12, 8/13/12). The minutes included an entry that the motion to "approve the pension paperwork for Local Union Officers, Business Agents and Office Staff" carried. (Id.) Thompson inquired whether the pension company and policies for office staff changed at the September 2012 general membership meeting. (Id. at 9/9/12). Garofalo responded that the Union "changed companies, but kept the same terms." (Id.) Hicks was also present at the September 2012 general membership meeting. (Id.) Thompson and other Union members inquired about the pension plan changes at multiple meetings throughout plaintiffs' 2012 to 2014 tenure on the executive board. (Id. at 10/14/12, 2/10/13, 10/6/13, 7/13/14, 8/10/14). At the February 2013 and August 2014 general membership meetings, Garofalo answered questions about the vesting provisions and qualifications to participate in the Plan as well as the source of funding thereof. (Id. at 2/10/13). Thompson testified that the executive board responded to questions about the vesting provision by saying "[w]e did the same

7

thing you did," referring to the waiver in the original 2008 version of the Plan. (10/23/17 Trial Tr. 70:7-25).

### C. Request for Distribution

The Union held regularly scheduled elections in October 2014. (Doc. 54 ¶ 16). Plaintiffs ran for reelection but were divided between two opposing slates of candidates. (Id.) Thompson and Hicks ran on a third slate for president and secretary-treasurer, respectively. (P-61 at 9/14/14; 10/24/17 Trial Tr. 90:4-20). Plaintiffs' two slates lost the election to Thompson's slate. (Doc. 54 ¶ 16; see also Doc. P-61 at 1/11/15). Following the election, the general membership voted to prohibit payment of any pension benefits to outgoing officers and business agents until the incoming executive board had "an opportunity to review all such proposed expenditures and policies and make an appropriate report and recommendation to the [membership]." (P-61 at 12/14/14).

Plaintiffs' Union employment terminated on December 31, 2014; Dietz's last day was January 2, 2015. (Doc. 54 ¶ 17). Each plaintiff requested a distribution from the Plan in January 2015 after leaving office; Dietz requested her distribution in May 2015. (Id. ¶¶ 5, 18). The new executive board voted to designate Thompson and Hicks as Plan trustees and amend the Plan accordingly in February 2015. (P-60 at 2/2/15; 10/23/17 Trial Tr. 58:5-14). After receiving plaintiffs' requests for distribution, Thompson and Hicks reviewed the 2012 Plan documents and the July 2, 2012 executive board meeting minutes. (10/23/17 Trial Tr. 19:24-20:1, 28:1-16, 30:18-31:7, 90:11-14, 91:25-93:9; Doc. 54 ¶ 19). Thompson and Hicks sent each plaintiff a letter in February 2015 indicating the Plan would distribute each

8

plaintiff's respective account balance less any contributions and associated earnings attributable to their first year of covered service. (Doc. 54 ¶ 19; P-31; 10/23/17 Trial Tr. 90:3-10). Each letter explained that benefits for the first year of covered service were denied because the board was "unable to locate any records of [the Union] indicating that the [] modification in employment service requirements for commencement of plan participation was properly approved." (P-31; 10/23/17 Trial Tr. 21:12-25).

Plaintiffs timely appealed the decision denying contributions and associated earnings for their first year of Union employment. (Doc. 54 ¶ 22). The Plan invited plaintiffs to submit additional information and documentation in support of their appeals. (Id. ¶ 23). Plaintiffs subsequently provided Thompson and Hicks with affidavits attesting that the 2012–2014 executive board approved the new Plan amendment and the one-year-of-service requirement waiver in 2012, as well as Garber's handwritten notes from the July 2, 2012 executive board meeting. (P-37; P-38; see also P-15; P-45; P-46; P-48; P-50). Plaintiffs filed their instant complaint on October 2, 2015 before defendants issued a determination on plaintiffs' appeal.[3] (Doc. 54 ¶¶ 24-25). Defendants denied plaintiffs' appeal ten days later. (P-39; 10/23/17 Trial Tr. 48:20-49:5, 94:23-95:14). Plaintiffs' individual pension benefit accounts with the Plan contained a combined total of $161,630.94 in principal and investment income as of September 30, 2017. (P-62; see also Doc. 57).

---

[3] Defendants stipulated that plaintiffs exhausted their administrative remedies under the Plan prior to filing the instant suit. (10/24/17 Trial Tr. 114:1-3).

9

## II. Conclusions of Law

Plaintiffs aver that the Plan and the Union, as Plan administrator, violated ERISA by failing to pay contributions and associated earnings for plaintiffs' first year of employment service. Plaintiffs further argue that the Union, Thompson, and Hicks breached their fiduciary duties under ERISA. Defendants assert that Garofalo breached his fiduciary duties as Plan trustee under ERISA and that Garber, Garofalo, and Wilson breached their fiduciary duty under LMRDA. The court will address these claims *seriatim*.

### A. Denial of Benefits Under ERISA

ERISA provides a right of civil action to a participant or beneficiary to recover benefits due to him or to enforce his rights under the terms of his plan. 29 U.S.C. § 1132(a)(l)(B). The standard of review applicable to decisions of ERISA plan trustees and administrators is derived from the plan document. Dowling v. Pension Plan For Salaried Emps. of Union Pac. Corp. & Affiliates, 871 F.3d 239, 245 (3d Cir. 2017) (citing Conkright v. Frommert, 559 U.S. 506, 512 (2010)). A denial of benefits challenged under Section 1132(a)(1)(B) is reviewed *de novo*. Conkright, 559 U.S. at 512 (2010) (quoting Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989)); Dowling, 871 F.3d at 245. When the plan document provides the fiduciary or administrator "discretionary authority to determine eligibility for benefits or to construe the terms of the plan," the court should not disturb the determination if reasonable. Dowling, 871 F.3d at 245 (quoting Conkright, 559 U.S. at 512)).

As a threshold matter, plaintiffs have established by a preponderance of the evidence that the 2012-2014 executive board enacted the 2012 Plan amendment.

The executive board authorized Garofalo to investigate possible solutions to the gap in pension benefits for newly elected or appointed Union employees. Garofalo ultimately recommended establishing an amended or restated pension plan for Union employees that would substantially mirror the 2009 restatement. To specifically address employee concerns regarding the gap in pension benefits, the proposed Plan amendment included a waiver of the one-year-of-service provision. Modeled on the 2008 version of the Plan, the 2012 iteration specifically waived the requirement for anyone employed on or before September 1, 2012. The court finds credible plaintiffs' testimony that the executive board reviewed the proposal documents, discussed any concerns with the Plan amendment's provisions and costs, and voted to approve the 2012 revisions at the July 2, 2012 executive board meeting pursuant to its authority under the Union bylaws.[4]

The Union and the Plan, through trustees Thompson and Hicks, did not deny plaintiffs benefits for their first year of service pursuant to a grant of discretionary authority under the Plan. Cf. Conkright, 559 U.S. at 512. *Per contra*, both

---

[4] The court is unpersuaded by defendants' argument that the enactment of the 2012 plan was invalid because the executive board's meeting minutes are lacking in specificity. The July 2, 2012 executive board meeting minutes clearly state that pension paperwork was approved. The court observes that no binding authority exists that mandates the executive board list each specific plan provision in the executive board meeting minutes in order for the plan to be validly enacted. (Compare P-60 at 5/5/08 with id. at 7/2/12). Defendants point to the International Brotherhood of Teamsters' policies and procedures manual but this manual is advisory. (D-8 at 2). The manual only admonishes that minutes be recorded accurately and include detail when necessary to make the record complete and understandable to a reader at a later date. (Id. at 4). That the July 2, 2012 executive board meeting minutes enabled Union members to ask probing questions about the Plan's provisions at multiple general membership meetings underscores the adequacy of information contained therein.

Thompson and Hicks testified that they denied these benefits because they believed the 2012 version of the Plan was invalid. Nothing in the Plan documents provides the Plan administrator or Plan trustees with discretionary authority to determine the applicability of this waiver or to construe it beyond its plain meaning. Accordingly, the court reviews the denial of benefits for plaintiffs' first year of Union employment *de novo*. See Dowling, 871 F.3d at 245.

The 2012 Plan documents are unambiguous on their face. The adoption agreement and the summary plan description both implement a one-year-of-service requirement. Furthermore, both documents clearly state that this requirement is waived for any Union employee hired on or before September 1, 2012. The court finds that the Union and the Plan wrongfully denied benefits to plaintiffs for their first year of covered service beginning January 1, 2012.

### B. Breach of Fiduciary Duty Under ERISA

A plan fiduciary shall discharge his duties "solely in the interest of the participants and beneficiaries" and for the exclusive purpose of providing benefits to same and defraying reasonable expenses of administering the plan. 29 U.S.C. § 1104(a)(1)(A). The fiduciary must also discharge these duties in accordance with governing plan documents insofar as those documents are consistent with ERISA. Id. § 1104(a)(1)(D). The common law of trusts defines the general scope of authority and responsibility possessed by plan trustees and other fiduciaries. *In re* Unisys Corp. Retiree Med. Benefits ERISA Litig., 579 F.3d 220, 227 (3d Cir. 2009). Fiduciary duties are attached to "particular persons performing particular

functions." Edmonson v. Lincoln Nat. Life Ins. Co., 725 F.3d 406, 413 (3d Cir. 2013) (citing Unisys Corp., 579 F.3d at 228).

### 1. *The Union, Thompson, and Hicks*

The court finds the plaintiffs have not established by a preponderance of the evidence that the Union as Plan administrator, and Thompson and Hicks as Plan trustees, violated their fiduciary duties. The validity of the 2012 Plan amendment and proper Union procedures for adopting a pension plan are at the center of this dispute. Thompson and Hicks simply believed that the 2012 amendment to the Plan was invalidly enacted and therefore premised the denial of benefits for plaintiffs' first year of covered service on either the 2009 or 2015 iteration of the Plan.[5] Culled to its essence, defendants' decision was premised on an erroneous assumption but does not constitute a breach of fiduciary duty.

### 2. *Garofalo*

ERISA requires a plan fiduciary to not "deal with the assets of the plan in his own interest or for his own account." Id. at 413 (citing 29 U.S.C. § 1106(b)). The duties described under Sections 1104 and 1106 of ERISA can be described as a fiduciary's duty of loyalty. Id. Not all breaches of loyalty involve self-dealing but self-dealing is by its nature a breach of the duty of loyalty. Spear v. Fenkell, No. 13-2391, 2016 WL 5661720, at *15 (E.D. Pa. Sept. 30, 2016), clarified on denial of

---

[5] Thompson and Hicks struggled to recall exactly which plan documents they reviewed when considering plaintiffs' distribution request following the conclusion of the 2012-2014 executive board's term in office. (Compare 10/23/17 Trial Tr. 28:1-16 with id. 33:1-18; see also id. 59:1-20, 91:25-93:9, 109:14-110:21). Thompson was also unable to clarify which version he was operating under as a Plan trustee. (Id. 56:19-58:17).

13

reconsideration, 2016 WL 7475814 (E.D. Pa. Dec. 29, 2016) (citing Kujanek v. Houston Poly Bag I, Ltd., 658 F.3d 483, 489 (5th Cir. 2011); LaScala v. Scrufari, 479 F.3d 213, 221 (2d Cir. 2007)).  Trustees must act "with an eye single to the interests of the participants and beneficiaries of the plan." Reich v. Compton, 57 F.3d 270, 291 (3d Cir. 1995), amended (Sept. 8, 1995) (quoting Donovan v. Bierwirth, 680 F.2d 263, 271 (2d Cir. 1982)).

ERISA does not prohibit a plan fiduciary from simultaneously serving as an officer of the employer.  McMahon v. McDowell, 794 F.2d 100, 110 (3d Cir. 1986) (quoting 29 U.S.C. § 1108(c)(3)).  Following a careful and impartial investigation, a pension plan trustee may take an action that he reasonably concludes will promote the best interest of participants and beneficiaries without violating his fiduciary duty, even if he incidentally benefits.  Delta Star, Inc. v. Patton, 76 F. Supp. 2d 617, 636-37 (W.D. Pa. 1999) (quoting Donovan, 680 F.2d at 271).  However, fiduciaries must affirmatively avoid conflicts of interest which may require utilization of a "neutral referee."  McMahon, 794 F.2d at 110 (citing Donovan, 680 F.2d at 271).

Garofalo wore several hats during the 2012-2014 term.  He was the Union's secretary-treasurer, a Plan trustee, and a covered Union employee.  Garofalo's dual occupation of the secretary-treasurer and Plan trustee roles does not constitute an ERISA violation, see McMahon, 794 F.2d at 110, but ERISA did impose on Garofalo an obligation to avoid taking action as a Union officer that would prevent him from functioning with complete loyalty to Plan participants, id. (quoting Donovan, 680 F.2d at 271).  The court finds that Garofalo satisfied his obligations as Plan trustee

14

and did not breach his duty of loyalty to Plan participants by engaging in self-dealing.

The proposal to amend the Union's pension plan to include a waiver of the one-year-of-service requirement was animated by Union employee concerns. The unelected office staff expressed apprehension about making investment decisions absent professional guidance under the existing Plan iteration. Both elected and appointed Union employees viewed the one-year-of-service requirement as an unnecessary penalty conjoined to acceptance of formal positions within the Union. These issues expressed by Plan participants and beneficiaries motivated Garofalo's investigation of potential solutions. The investigation resulted in recommendations that the Plan: (1) appoint Merrill Lynch as investment advisor, (2) change the Plan's contract administrator to Continental, and (3) adopt the one-year-of-service requirement waiver. We find that Garofalo's recommendations to the executive board were in the best interests of the Plan participants and beneficiaries, and entirely consistent with his fiduciary duties. See Delta Star, 76 F. Supp. 2d at 636-37.

Moreover, Garofalo did not breach his fiduciary duty of loyalty by incidentally benefiting from his vote to approve the 2012 Plan amendment. As a covered employee, he was ineligible under the existing version of the Plan to receive contributions to his pension account because he had less than one year of Union employment. The 2012 waiver of the one-year-of-service requirement enabled Garofalo to receive contributions to his pension account from the Union. White, Thevenin, Green, and Turns were voting members of the executive board

but were not covered employees and gained no pecuniary benefit from the enactment of the 2012 amendment. These *four* independent officers voted unanimously with the remaining *two* interested executive board members (Garber and Garofalo) to approve the waiver provision following a discussion of the proposed changes. The presence of these neutral referees ensured that Garofalo did not breach his duty of loyalty to Plan participants through self-dealing. See McMahon, 794 F.2d at 110.

### C. Breach of Fiduciary Duty Under LMRDA

Section 501 of the LMRDA provides, in relevant part, that officers, agents, shop stewards, and other representatives of a labor organization have a duty "to hold its money and property solely for the benefit of the organization and its members and to manage, invest, and expend the same in accordance with its constitution and bylaws and any resolutions of the governing bodies adopted thereunder." 29 U.S.C. § 501(a). Such individuals must also "refrain . . . from holding or acquiring any pecuniary or personal interest which conflicts with the interests of such organization." Id. The fiduciary duties of union officers under Section 501 are broad in scope. Kovach v. Serv. Pers. & Emps. of the Dairy Indus., Local Union No. 205, 58 F. Supp. 3d 469, 483 (W.D. Pa. 2014) (citing Sabolsky v. Budzanoski, 457 F.2d 1245, 1250 (3d Cir. 1972)). The purpose of Section 501 is to combat union corruption, but "not every ill-conceived move on the part of a union constitutes a [] violation." Conery v. Niccollai, 33 F. App'x 613, 617 (3d Cir. 2002) (nonprecedential) (citing Sabolsky, 457 F.2d at 1250); see also Loretangeli v. Critelli, 853 F.2d 186, 189 (3d Cir. 1988).

Section 501 serves to prevent a union official from personally benefiting through the use or receipt of union funds "beyond a range of reasonableness." Conery v. Niccollai, No. 92-840, 1998 WL 34076964, at *2 (D.N.J. Feb. 26, 1998) (citations omitted). Section 501 is not a mechanism for judicial oversight of union decisionmaking, but rather a means of redressing unreasonable and arbitrary actions of unions. Id. (citing Kepplick v. Pa. Tel. Guild, 631 F. Supp. 1073 (W.D. Pa. 1986)). Generally, a union official does not violate Section 501 when he acts with authorization, without direct personal gain, and in accordance with the union's constitution and bylaws. Id. (citation omitted).

Garber, Garofalo, and Wilson maintain that defendants' counterclaim for breach of fiduciary duty under the LMRDA is barred by laches. Courts have applied the doctrine of laches to Section 501 because the cause of action therein is similar to a common law cause of action for breach of fiduciary duty. Morris v. Scardelletti, No. 94-3557, 1994 WL 675461, at *7 (E.D. Pa. Nov. 23, 1994) (citing Trs. v. Journeymen Plasterers' Protective and Benevolent Soc'y, Local No. 5, 794 F.2d 1217, 1220 (7th Cir. 1986)). The analogous Pennsylvania limitations period for a breach of fiduciary duty claim is two years. Id. at *8 (citations omitted).

The proponent of a laches defense must establish that the opposing party failed to exercise due diligence in prosecuting his claim and that such failure was to their detriment. Id. If the analogous statute of limitations period has expired, the burden shifts to the claimant to establish why the claim should not be barred. Id. This is a factual inquiry which centers on what the party reasonably should have known through "the use of the means of information within his reach with the

17

vigilance the law requires, not what he actually knew." Id. (citing Sprague v. Casey, 550 A.2d 184, 188 (Pa. 1988)); Teamsters, Chauffeurs, Warehousemen & Helpers Local 764 v. Greenawalt, 919 F. Supp. 774, 780 (M.D. Pa. 1996), aff'd in part and vacated in part *sub nom.* Teamsters, Chauffeurs, Warehousemen & Helpers, Local 764 v. Greenwalt, 116 F.3d 470 (3d Cir. 1997).

Defendants do not respond to the laches defense in their pretrial or post-trial submissions. (See generally Docs. 45-4, 58). Hence, the court finds that defendants have effectively waived any defense to plaintiffs' argument that their counterclaim for breach of fiduciary duty under LMRDA is barred by laches. See D'Angio v. Borough of Nescopeck, 34 F. Supp. 2d 256, 265 (M.D. Pa. 1999). Even if defendants had not waived their opposition to the laches defense, the court would nevertheless agree with plaintiffs. The executive board approved the Plan amendment on July 2, 2012 and trustees Garofalo and Turns signed the Plan documents on August 17, 2012. Defendants became aware of the 2012 amendment to the Plan during the July 8, 2012 general membership meeting. Defendants filed their LMRDA counterclaim on June 7, 2016, (Doc. 27), long after the analogous two year statute of limitations expired. Vesting provisions were specifically discussed at the February 10, 2013 general membership meeting, yet Thompson and Hicks never requested access to the 2012 Plan documents despite their undisputed right as members to access Union documents. See Morris, 1994 WL 675461, at *8. Defendants fail to establish why their claim for breach of fiduciary duty under LMRDA should not be time-barred.

**IV.** **<u>Conclusion</u>**

For the aforementioned reasons, the court finds in favor of plaintiffs on their ERISA claim for denial of benefits and on defendants' claims for breach of fiduciary duty in violation of ERISA and LMRDA. The court further finds in favor of defendants on plaintiffs' ERISA claim for breach of fiduciary duty against the Union, Thompson, and Hicks. The court will award damages for pension benefits for plaintiffs' first year of covered service as Union employees in the amount of $161,630.94. An appropriate order shall issue.

    /S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania

Dated: January 26, 2018