# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **MARIO ECKERT, ROBERT BAKER, STEVE BILLET, KEVIN BLOOM, JR., SHAWN CLARK, KAREN DIETZ, HERBERT C. GARBER, GISBEL GARCIA, JR., MARIO GAROFALO, BRADLEY HOCKENBERRY, MARTIN PARSON, and FRED WILSON,** : <br><br> **Plaintiffs** : <br><br> v. : <br><br> **CHAUFFEURS, TEAMSTERS AND HELPERS LOCAL UNION 776 PROFIT SHARING PLAN, CHAUFFEURS, TEAMSTERS AND HELPERS LOCAL UNION 776, EDGAR H. THOMPSON, and RONALD W. HICKS,** : <br><br> **Defendants** : | CIVIL ACTION NO. 1:15-CV-1920 <br><br> (Chief Judge Conner) |

## MEMORANDUM

Plaintiffs commenced this action against defendants pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.* The court previously entered judgment against defendants Chauffeurs, Teamsters and Helpers Local Union 776 Profit Sharing Plan ("the Plan") and Chauffeurs, Teamsters and Helpers Local Union 776 ("the Union") for wrongful denial of benefits under ERISA and in favor of the Union and defendants Edgar H. Thompson ("Thompson") and Ronald W. Hicks ("Hicks") on an ERISA claim for breach of fiduciary duty. The court entered judgment for plaintiffs Herbert C. Garber ("Garber"), Mario Garofalo ("Garofalo"), and Fred Wilson ("Wilson") on a

counterclaim for breach of fiduciary duty in violation of the Labor–Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. § 501(a), and for Garofalo on an ERISA counterclaim for breach of fiduciary duty. Plaintiffs now seek attorney's fees and costs. (Doc. 63).

## I.     Factual Background & Procedural History[1]

The Union administers an employee pension benefit plan subject to ERISA. Eckert, 306 F. Supp. 3d at 664. The Union's executive board sets the terms and conditions of Union employment and this authority extends to retirement benefits. Id. (citing Eckert v. Chauffeurs, Teamsters & Helpers Local Union 776 Profit Sharing Plan, No. 15-CV-1920, 2017 WL 959340, at *4 (M.D. Pa. Mar. 13, 2017)). Upon retirement or separation from covered employment, a plan participant may request benefits distribution. Id. In 2008, the Union established a new retirement benefit plan (hereinafter the "Plan"). Id. An employee became eligible for Plan participation after completing one year of covered service. Id. The executive board waived this requirement for anyone employed as of the Plan's effective date. Id.

Plaintiffs won election to the Union's executive board in October 2011 for the 2012-2014 term. Id. at 665. In response to grievances from Union employees about their pension benefits, secretary-treasurer Garofalo recommended, *inter alia*, amending or restating the pension plan to include a waiver of the one-year-of-

---

[1] Following a non-jury trial on October 23 and 24, 2017, the court issued a memorandum opinion and judgment on the parties' respective claims dated January 28, 2018. See Eckert v. Chauffeurs, Teamsters & Helpers Local Union 776 Profit Sharing Plan, 306 F. Supp. 3d 659 (M.D. Pa. 2018). The factual background of this case is more fully detailed in that prior opinion, familiarity with which is presumed. Limited citations to the trial record include the transcript of trial convened on October 23, 2017 ("10/23/17 Trial Tr.") and plaintiffs' exhibits ("P-").

2

service requirement for anyone employed on or before September 1, 2012. Id. at 665. The executive board reviewed the proposal documents, discussed the cost to the Union of implementing Garofalo's proposed change, and voted to approve the one-year-of-service waiver (hereinafter the "2012 Plan amendment"). Id. at 665-66. Of the six executive board members who voted to approve the 2012 Plan amendment, four did not personally benefit from the waiver. Id. at 666. The executive board designated Garofalo as one of two Plan trustees. Id.

At the July 2, 2012 general membership meeting, the executive board notified Union members of the 2012 Plan amendment. Id. Thompson and other Union members frequently asked the executive board questions about the 2012 Plan amendment and related matters at general membership meetings through August 2014. Id. The executive board explained that its one-year-of-service waiver mirrored the waiver executed in 2008. Id. In October 2014, Thompson and Hicks defeated plaintiffs for election to the Union's executive board. Id. After assuming office in January 2015, Thompson and Hicks were designated Plan trustees and plaintiffs requested distribution of their pension benefits under the Plan. Id. Following a review of Plan documents, executive board meeting minutes, and plaintiffs' request, defendants distributed pension benefits for all but the first year of covered service. Id. at 666-67. In denying plaintiffs benefits for their first year of covered service, defendants stated that they were unable to locate any Union records indicating that the 2012 Plan amendment was properly approved. Id. at 667.

Plaintiffs filed this action asserting one ERISA claim for wrongful denial of benefits against the Plan and the Union and one breach of fiduciary duty claim against the Union, Thompson, and Hicks. Defendants brought one ERISA counterclaim for breach of fiduciary duty against Garofalo and one LMRDA counterclaim for breach of fiduciary duty against Garber, Garofalo, and Wilson. The court ruled at summary judgment that the Union's bylaws vest the executive board with the authority to change retirement benefits which are set forth in the Plan's governing documents. Following a non-jury trial on October 23 and 24, 2017, the court ruled in favor of plaintiffs on their ERISA claim for denial of benefits. Garber, Garofalo, Wilson, Thompson, and Hicks each prevailed on the breach of fiduciary duty claims asserted against them, respectively.

Plaintiffs now move for attorney's fees and costs pursuant to 29 U.S.C. § 1132(g)(1). Plaintiffs are represented by the law firms of Barley Snyder LLP ("Barley Snyder") and the Law Offices of Peter J. Russo, PC ("Russo Law Offices"). (Doc. 64 at 13). During the early stages of this litigation, plaintiffs were represented by Goldberg Katzman, P.C. ("Goldberg Katzman). (Doc. 63-3 ¶ 1). Plaintiffs seek attorney's fees in the amount of $140,842.25 and costs in the amount of $7,311.15. (Doc. 63 ¶ 26; Doc. 64 at 13). Specifically, the legal team billed as follows:

**Goldberg Katzman**

- Attorney Michael J. Crocenzi ("Crocenzi")
    - Time:    206.60 hours[2]
    - Rate:    $300.00
    - Total:   $61,980.00
- Attorney Camille Howlett ("Howlett")
    - Time:    10.90 hours
    - Rate:    $200.00
    - Total:   $2,180.00
- Paralegal Jay Bishop ("Bishop")
    - Time:    32.50 hours
    - Rate:    $125.00
    - Total:   $4,062.50
- Costs
    - Total:   $3,615.12[3]

**Barley Snyder**

- Attorney Crocenzi
    - Time:    131.30 hours[4]
    - Rate:    $300.00
    - Total:   $39,390.00

---

[2] Crocenzi submits that he worked a combined 340.60 hours on the instant litigation during his time at Goldberg Katzman and then Barley Snyder. (Doc. 63 ¶ 26). As discussed *infra*, Crocenzi expended 131.30 hours on this matter at Barley Snyder. Based on an extensive review of Crocenzi's Goldberg Katzman billing statements, the court concludes that Crocenzi expended an additional 206.6 hours working on this case. (See Doc. 63-3 at 9-41). We therefore find that Crocenzi worked a total of 337.90 hours on this instant matter.

[3] Plaintiffs provide an itemized list of costs for Goldberg Katzman totaling $3,813.47. (Doc. 63-7 at 2). In their brief in support of the motion for attorney's fees and costs, plaintiffs seek only $3,615.12, which appears to exclude $198.35 in copy costs. (Compare id. with Doc. 64 at 13). The court will construe plaintiffs' motion as requesting reimbursement to Goldberg Katzman for costs totaling $3,615.12.

[4] Crocenzi seeks $39,390.00 for his work on this case when employed at Barley Snyder. (Doc. 64 at 13). According to his billing statements, Crocenzi worked 131.5 hours on this matter at Barley Snyder, which at a $300.00 per hour rate results in attorney's fees of $39,450.00. (See Doc. 63-3 at 42-49). Construing this discrepancy as intentional, the court will use the requested fee award of $39,390.00 which equates to 131.3 hours of work.

5

- Costs
    - Total: $2,161.25

**Russo Law Offices**

- Attorney Peter J. Russo ("Russo")
    - Time: 103.70 hours[5]
    - Rate: $300.00
    - Total: $31,110.00
- Paralegal Ashley Malcolm ("Malcolm")
    - Time: 9.83 hours
    - Rate: $125.00
    - Total: $1,228.75
- Costs
    - Total: $1,534.78

(See Doc. 63 ¶ 26; Doc. 64 at 13; Doc. 63-4 at 19; Doc. 63-7 at 2). Plaintiffs submit that reasonable rates for the Harrisburg market are $300 per hour for experienced attorneys, $200 per hour for associates, and $125 per hour for paralegals. (Doc. 64 at 12; see also Doc. 63-3 ¶¶ 7-9; Doc. 63-4 ¶¶ 8-10; Doc. 63-5 ¶ 5; Doc. 63-6 ¶¶ 10, 13). The motion is fully briefed and ripe for disposition.

## II. Legal Standard

ERISA grants courts discretionary authority to award reasonable attorney's fees and costs to either party in an action under Section 1132. 29 U.S.C. § 1132(g)(1). As a threshold matter, a party seeking attorney's fees and costs under ERISA must show "some degree of success on the merits" beyond a purely procedural or trivial victory. Templin v. Indep. Blue Cross, 785 F.3d 861, 865 (3d Cir. 2015) (quoting Hardt v. Reliance Standard Life Ins. Co., 560 U.S. 242, 252 (2010)). The court must

---

[5] Plaintiffs claim Russo worked 103.70 hours, at a rate of $300.00 per hour, for a total of $31,191.00. (Doc. 63 ¶ 26). Russo Law Offices' billing statement reflects Russo worked 103.97 hours. (Doc. 63-4 at 18). Given this discrepancy, the court will use the lesser claimed amount of 103.7 hours.

6

then consider each of the following five factors in determining whether to exercise discretion in awarding attorney's fees and costs: (1) the offending party's degree of culpability or bad faith, if any; (2) the offending party's ability to satisfy an award of attorney's fees; (3) the deterrent effect on the offending party of awarding fees; (4) the benefit conferred on pension plan members as a whole; and (5) the relative merits of each party's respective position.  Id. at 867 (quoting Ursic v. Bethlehem Mines, 719 F.2d 670, 673 (3d Cir. 1983)); Anthuis v. Colt Ind. Operating Corp., 971 F.2d 999, 1011 (3d Cir. 1992).  A party need not demonstrate that all five factors weigh in its favor to receive an award of attorney's fees.  Fields v. Thompson Printing Co., 363 F.3d 259, 275 (3d Cir. 2004).

## III. Discussion

Plaintiffs seek attorney's fees and costs for their work on this litigation. Defendants acknowledge that plaintiffs prevailed on their claim for denial of benefits but argue that the Ursic factors weigh against an award of fees and costs. Defendants alternatively contend that plaintiffs' fee request should be reduced to account for plaintiffs' limited success on the merits.  We begin with a review of the Ursic factors.

### A. Culpability or Bad Faith

A party driven by "an ulterior motive or sinister purpose" acts in bad faith. McPherson v. Emps.' Pension Plan of Am. Re-Ins. Co., 33 F.3d 253, 256-57 (3d Cir. 1994) (citing Ford v. Temple Hosp., 790 F.2d 342, 347 (3d Cir. 1986)).  Culpable conduct is blameworthy or censurable and usually exceeds simple negligence.  Id. at 256-57 (quoting BLACK'S LAW DICTIONARY (6th ed. 1990)).  A party may engage in

7

culpable conduct, such as the breach of a legal duty, without malice or an ulterior motive.  Id.  Culpable conduct includes illogical or arbitrary denials of ERISA benefits.  Music v. Prudential Ins. Co. of Am., No. 1:05-CV-1223, 2007 WL 3085606, at *2 (M.D. Pa. Oct. 19, 2007) (Conner, J.) (collecting cases).  A court should consider whether the offending party was culpable "during the most relevant period of the litigation."  Templin, 785 F.3d at 868.  Culpable conduct by the party seeking attorney's fees, "on its own, does not cut against an award of attorney's fees."  Id.  Moreover, culpability is not established merely because the offending party took "a position that did not prevail in litigation."  McPherson, 33 F.3d at 257.

      The trial record is devoid of evidence that defendants acted in bad faith.  To the contrary, defendants distributed plaintiffs' accrued pension benefits as requested except for the disputed first year of covered service.  Eckert, 306 F. Supp. 3d at 667.  And defendants correctly note that Thompson and Hicks denied plaintiffs' benefits request for their first year of covered service based on "an erroneous assumption" that the 2012 Plan amendment was invalidly enacted and they therefore did not breach their fiduciary duties.  (Doc. 65 at 4 (quoting Eckert, 306 F. Supp. 3d at 669)).  But this fact alone does not establish a lack of culpability.

      In denying plaintiffs' request for distribution of benefits for their first year of covered service, defendants claimed they were "unable to locate any records"

indicating that the 2012 Plan amendment was properly approved.[6] Eckert, 306 F. Supp. 3d at 667. However, minutes from the executive board's July 2, 2012 meeting "clearly state that pension paperwork was approved." Id. at 668 n.4. Thompson and other Union members asked probing questions about the 2012 Plan amendment based on the information contained in the July 2, 2012 executive board meeting minutes, which Garber read aloud at two general membership meetings. Id. at 666. Moreover, the 2012 Plan documents—the adoption agreement and the summary plan description—unambiguously implement a waiver of the one-year-of-service requirement for any Union employee hired on or before September 1, 2012. Id. at 668. Despite these meeting minutes and the 2012 Plan documents, defendants nevertheless took the illogical position that no record of the executive board's approval of the 2012 Plan amendment existed.

Defendants' confusion over which Plan amendments were approved properly and what iteration of the Plan governed Union employees further underscores the arbitrariness of defendants' conduct. At trial, Thompson and Hicks could not recall exactly which documents they reviewed when considering plaintiffs' benefits distribution request. Eckert, 306 F. Supp. 3d at 669 n.5. Thompson also could not

---

[6] Plaintiffs cite Music for the proposition that defendants acted illogically and arbitrarily by denying benefits because plaintiffs failed to follow a six-step process not outlined in the Plan documents or Union bylaws when adopting the 2012 Plan amendment. (Doc. 64 at 6). The denial of benefits based on "additional requirements not contained in the written plan" constitutes culpable conduct. Music, 2007 WL 3085606, at *2 (citing Lyon v. Kimberly Clark Corp. Pension Plan, No. 05-3201, 2007 WL 1852215, at *2 (D.N.J. June 26, 2007)). But defendants did not deny plaintiffs benefits because they failed to meet criteria not contained in the Plan documents; rather, defendants argued the 2012 Plan amendment was invalid because the Union's executive board failed to approve the 2012 Plan amendment in accordance with a particular procedure. (See P-39).

state with certainty whether he was operating as a Plan trustee under the 2009, 2012, or 2015 Plan iteration. Id.; (see also 10/23/17 Trial Tr. 56:19-58:17). And Hicks acknowledged that the 2009-2011 executive board, of which he was a voting member, validly enacted a Plan restatement in 2009 without including that information in the executive board meeting minutes. (See 10/23/17 Trial Tr. 100:20-102:7; P-60 at 1/5/09, 2/2/09, 3/2/09, 4/9/09). Hicks' testimony places the far clearer record of the executive board's adoption of 2012 Plan amendment in stark relief. Defendants engaged in culpable conduct with respect to the denial of benefits for plaintiffs' first year of covered service. This factor therefore weighs in favor of a fee award.

### B. Ability to Pay

The court must next consider the offending party's ability to satisfy any attorney's fees awarded. A prevailing party's ability to pay its own legal fees is "irrelevant to the court's inquiry into the propriety of requiring an offending party" to satisfy a fee award under ERISA. Ellison v. Shenango Inc. Pension Bd., 956 F.2d 1268, 1277 (3d Cir. 1992). In 2016, the Union reported revenues of $5,400,207 and net assets of $4,676,366. (Doc. 64-2 at 4-5). Defendants acknowledge that the Union is "capable of satisfying" a fee award but note that Thompson, Hicks, and the Plan are unable or limited in their ability to contribute. (Doc. 65 at 5). This factor weighs in favor of a fee award.

### C. Deterrence

A fee award is proper, even in the absence of bad faith conduct, if it will encourage the offending party to comply with the general objectives of ERISA and

10

treat plan participants fairly in the future.  McPherson, 33 F.3d at 258.  The first and fifth Ursic factors inform a court's analysis as to the possible deterrent effect of a fee award.  See Templin, 785 F.3d at 868.

ERISA embodies a "careful balancing between ensuring fair and prompt enforcement of rights under a plan and the encouragement of the creation of such plans."  Conkright v. Frommert, 559 U.S. 506, 517 (2010) (internal quotation marks omitted) (quoting Aetna Health Inc. v. Davila, 542 U.S. 200, 215 (2004)).  ERISA seeks to "protect . . . the interests of participants in employee benefit plans and their beneficiaries" through creation of a uniform regulatory regime to govern employee benefit plans, Davila, 542 U.S. at 208 (quoting 29 U.S.C. § 1001(b)), and to ensure that administrative costs and litigation expenses do not "unduly discourage employers from offering [ERISA] benefit plans in the first place," Varity Corp. v. Howe, 516 U.S. 489, 497 (1996).  The statute also "provid[es] for appropriate remedies, sanctions, and ready access to the Federal courts" for employees participating in these benefits plans.  Davila, 542 U.S. at 208 (quoting 29 U.S.C. § 1001(b)).

The very circumstances of this litigation caution future Union executive boards to carefully follow all procedures for amending the Plan and to act in a transparent manner.  All parties advanced at least one meritorious claim or counterclaim, and defendants did not engage in outright bad faith conduct.  Nevertheless, we find that certain circumstances of this litigation strongly support a fee award to deter future culpable conduct.

Specifically, defendants lacked a reasonable basis for denying plaintiffs benefits for their first year of covered service. Defendants took a position on the validity of the 2012 Plan amendment that was directly at odds with Union records and past practices. Eckert, 306 F. Supp. 3d at 668 & n.4; (see 10/23/17 Trial Tr. 100:20-102:7; see generally P-60). This position was illogical and arbitrary. Moreover, during the two-day bench trial, the court observed significant hostility between these two Union factions. Plaintiffs and defendants ran against one another in both the 2011 and 2014 executive board elections. Eckert, 306 F. Supp. 3d at 666; (P-61 at 9/11/11). The court finds that this personal animosity in part motivated defendants' decision to deny plaintiffs benefits for their first year of covered service. A fee award would deter these defendants, as well as future board members and Plan trustees, from denying benefits in contravention of Union records or as political retribution. For these reasons, an award of attorney's fees and costs is likely to encourage the offending parties to treat Plan participants fairly in the future.

### D. Benefit to Pension Plan Members

Litigation weighs in favor of a fee award when it precipitates an official policy change to the benefit of other plan members, reinstates benefits for all plan members, or seeks relief on behalf of a plan. See Music, 2007 WL 3085606, at *3 (collecting cases). None of these circumstances is present in the matter *sub judice*. The 2012 Plan amendment applied to a limited group of Plan participants—certain executive board members and office personnel. Eckert, 306 F. Supp. 3d at 666. The court's judgment impacted this small universe of Plan participants, all but two of

12

whom are named plaintiffs in the above-captioned action. (Doc. 64 at 8). And the court's determination that the 2012 Plan amendment was validly enacted does not cause an official policy change to the benefit of all other Plan participants. The fourth factor does not weigh in favor of a fee award.

### E.  Merits of the Parties' Positions

A close relationship exists between a party's culpability under the first Ursic factor and the relative merits of the parties' positions during litigation under the fifth factor. Templin, 785 F.3d at 868. However, the prevailing party need not establish the presence of bad faith conduct to show that the fifth factor supports a fee award. McPherson, 33 F.3d at 258. A court must consider the merits of all claims, even if those claims were not fully adjudicated due to settlement or other alternative resolution. See Templin, 785 F.3d at 868.

Neither side advanced completely meritless claims at trial. Plaintiffs prevailed on their denial of benefits claim. Eckert, 306 F. Supp. 3d at 668. As noted *supra*, defendants' proffered bases for denying plaintiffs benefits for their first year of covered service were arbitrary and illogical. The 2012 Plan amendment was validly enacted and reflected in Union records from executive board and general membership meetings. Id. at 665-66.

The parties filed opposing breach of fiduciary duty claims under ERISA. Plaintiffs asserted that the Union as Plan administrator, and Thompson and Hicks as Plan trustees, violated their respective fiduciary duties by denying plaintiffs benefits. Defendants' denial of these benefits was premised on "an erroneous assumption" that the 2012 Plan amendment was invalidly enacted and was likely

13

compounded by confusion over which version of the Plan governed plaintiffs' request. See id. at 669 & n.5. Plaintiffs' breach of fiduciary duty claim did not succeed. Id. at 669.

Defendants contended that Garofalo breached his fiduciary duty of loyalty under ERISA by engaging in self-dealing. Garofalo occupied concurrent positions as the Union's secretary-treasurer and as a Plan trustee. Id. at 669-70. The complex nature of Garofalo's dual role raised legitimate questions as to whether he engaged in self-dealing by recommending and voting for a Plan amendment that benefited him personally. See id. The court ultimately concluded that Garofalo did not breach his fiduciary duty because his proposed changes to the Plan were "animated by Union employee concerns." Id. at 670. Moreover, four of six executive board members who voted to approve the 2012 Plan amendment were not covered employees and therefore did not benefit financially from its enactment. Id. That the court ruled against defendants does not mean that their ERISA counterclaim lacked all plausible merit.

Defendants also brought a breach of fiduciary duty claim pursuant to the LMRDA against Garber, Garofalo, and Wilson. They charged that Garber, Garofalo, and Wilson engaged in self-dealing by voting to enact the 2012 Plan amendment to their financial benefit without establishing that those additional benefits were reasonable. (Doc. 58 ¶¶ 73-75, 80-83). Notwithstanding the court's determination that defendants' LMRDA claim was barred by laches, the substance of the claim was potentially meritorious. See id. at 671-72. The court concludes that the fifth Ursic factor does not favor either party.

14

### F. Balance of the Five Ursic Factors

The Ursic factors on balance favor an award of attorney's fees and costs. As set forth above, only the fourth factor—benefit to all pension plan members—and the fifth factor—relative merits of the parties' respective positions—do not weigh in favor of a fee award. The remaining factors militate strongly in favor of a fee award. Defendants engaged in clearly culpable behavior by illogically and arbitrarily denying plaintiffs benefits for their first year of covered service. A fee award will deter such culpable conduct and ensure that Union politics do not impermissibly interfere with distribution of Plan benefits in the future. And defendants acknowledge that the Union has ample resources to pay a fee award and costs. We conclude that an award of attorney's fees and costs is warranted in this case.

### G. Attorney's Fees and Costs

When determining a reasonable fee award, the lodestar calculation provides "[a] useful starting point." Hahnemann Univ. Hosp. v. All Shore, Inc., 514 F.3d 300, 310 (3d Cir. 2008) (citing UAW Local 259 Soc. Sec. Dep't v. Metro Auto Ctr., 501 F.3d 283, 290 (3d Cir. 2007)). The product of the lodestar calculation—the reasonable quantity of hours worked on the case multiplied by a likewise reasonable hourly rate—"is a presumptively reasonable fee, but [] may still require subsequent adjustment." UAW Local 259, 501 F.3d at 290. A fee award need not be proportional to the amount of unpaid contributions recovered pursuant to ERISA. Id. at 295. When requesting or challenging an award of attorney's fees, parties must submit "fairly definite information as to hours devoted to various general activities"

in support of their respective positions.  Id. at 291 (quoting Evans v. Port Auth., 273 F.3d 346, 361 (3d Cir. 2001)).

>    1.   *Reasonable Rates and Hours*

As a threshold matter, we address plaintiffs' proposed hourly rates. Attorneys Crocenzi and Russo contend that the complexity of this litigation combined with their experience renders $300.00 a reasonable hourly rate in the Middle District of Pennsylvania.  (Doc. 64 at 12).  Crocenzi and Russo each have approximately 25 years' practicing experience in this district.  (See Doc. 63-3 ¶¶ 7-9; Doc. 63-4 ¶¶ 8-10).  A survey of recent fee awards reveals that judges in this district have found hourly rates in the range of $300.00 to $375 to be reasonable for attorneys with comparable experience.  See, e.g., Cmty. Ass'n Underwriters of Am., Inc. v. Queensboro Flooring Corp., No. 3:10-CV-1559, 2016 WL 1076910, at *5 (M.D. Pa. Mar. 18, 2016) (Mehalchick, M.J.) (collecting cases); United States *ex rel.* Sharon McKinney v. DHS Techs., LLC, No. 3:11-CV-146, 2015 WL 11675668, at *6 (M.D. Pa. Oct. 27, 2015) (Carlson, M.J.) (collecting cases), adopted by 2016 WL 4592175, at *6 (M.D. Pa. Feb. 4, 2016) (Mariani, J.).  Accordingly, we find that $300.00 is a reasonable rate for Crocenzi and Russo as experienced attorneys.

Plaintiffs submit that $200.00 is a reasonable rate for associate Howlett.  (Doc. 64 at 12).  We disagree.  In recent years, judges in this district have found $150.00 to be a reasonable rate for second and third year associates.  See Cmty. Ass'n Underwriters of Am., 2016 WL 1076910, at *5-6 (collecting cases).  At the conclusion of Goldberg Katzman's involvement in this litigation, Howlett had been

16

practicing for approximately three years.  (Doc. 63-3 ¶¶ 1, 8).  Therefore, a rate of $150.00 per hour is reasonable for Howelett.

Plaintiffs aver that $125.00 is a reasonable rate for paralegals.  (Doc 64 at 12). Current billing rates for paralegals in the Middle District range from $75.00 to $150.00 per hour depending on "skill and experience."  <u>Clemens v. N.Y. Cent. Mut. Fire Ins. Co.</u>, 264 F. Supp. 3d 618, 661-62 (M.D. Pa. Aug. 29, 2017) (Mannion, J.) (collecting cases).  Malcolm has over 10 years' experience as a paralegal with Russo Law Offices and thus, $125.00 is a reasonable paralegal rate for Malcolm.  (Doc. 63-5 ¶ 2; <u>id.</u> at 5).  The record is devoid of information regarding Bishop's experience. (<u>See</u> Doc. 63-3 ¶ 9).  Nevertheless, in the absence of evidence or argument to the contrary, we will assume $125.00 is a reasonable rate for Bishop.

Defendants do not challenge the hourly rates charged by plaintiffs' attorneys and paralegals or the proffered costs of litigation.  They contend only that the court should reduce any fee award to plaintiffs to account for (1) any hours spent on plaintiffs' unsuccessful ERISA breach of fiduciary duty claim against Thompson, Hicks, and the Union and (2) any hours associated with defendants' LMRDA breach of fiduciary duty claim against Garofalo because the court dismissed that claim on procedural grounds.  (Doc. 65 at 7-9).  We decline to do so.

Plaintiffs' claims for denial of benefits and breach of fiduciary duty under ERISA rested on a common set of core facts, and plaintiffs advanced different but related legal theories for each.  Plaintiffs achieved the primary relief desired— pension benefits for their first year of covered service—and the court sees no meaningful way to distinguish between work done on each claim, respectively.

17

Moreover, plaintiffs' "procedural" victory on defendants' LMRDA breach of fiduciary duty claim does not merit a fee reduction because plaintiffs fully litigated the issue without regard to how the court disposed of the claim. Plaintiffs received substantial relief in this litigation and we find the hours expended in pursuit thereof to be reasonable.

### 2. *Recapitulation*

We will award attorney's fees in the amount of $139,406.25 and costs in the amount of $7,311.15 to plaintiffs. The breakdown of this award to plaintiffs' counsel is as follows:

**Goldberg Katzman**

- Attorney Crocenzi
    - Time:    206.60 hours
    - Rate:    $300.00
    - Total:   $61,980.00
- Attorney Howlett
    - Time:    10.90 hours
    - Rate:    $150.00
    - Total:   $1,635.00
- Paralegal Bishop
    - Time:    32.50 hours
    - Rate:    $125.00
    - Total:   $4,062.50
- Costs
    - Total:   $3,615.12

**Barley Snyder**

- Attorney Crocenzi
    - Time:    131.30 hours
    - Rate:    $300.00
    - Total:   $39,390.00
- Costs
    - Total:   $2,161.25

**Russo Law Offices**

- Attorney Russo
    - Time: 103.70 hours
    - Rate: $300.00
    - Total: $31,110.00
- Paralegal Malcolm
    - Time: 9.83 hours
    - Rate: $125.00
    - Total: $1,228.75
- Costs
    - Total: $1,534.78

## IV. Conclusion

The court will grant in part and deny in part plaintiffs' motion (Doc. 63) for attorney's fees and costs. An appropriate order shall issue.

        /S/ CHRISTOPHER C. CONNER
        Christopher C. Conner, Chief Judge
        United States District Court
        Middle District of Pennsylvania

Dated: September 17, 2018